The final case this morning is Research Corporation v. Microsoft Corp. When you're ready, Mr. Jakes, you may proceed. Good morning and may it please the Court. There are two issues and two separate groups of claims that are on appeal this morning. I'd like to start talking about the priority issue and the 112 written description first. Here, the District Court erred as a matter of law. It held that the claims were not supported by the two priority applications unless they expressly recited a blue noise mask and the method steps from Figure 2 for constructing that blue noise mask. Now, the Court originally held that Claims 4 and 63 of the 772 patent were not entitled to the 1990 and 1991 priority applications, but then extended that ruling to Claim 29. But Claim 29 does recite a blue noise mask, so I really wanted to start there. If we agree that Claim 29 is entitled to the priority, doesn't that moot the other issues, the other priority concerns? Your Honor, under the parties' agreement, the settlement agreement that was entered into, Claim 29 would moot part of it. But there are some other claims that were held not to have priority that also fall into a different category. There are method claims and apparatus claims. Well, perhaps, but I don't believe it's our role to advise as to what kind of deal the parties might have made. I understand that. And I don't believe that agreement is before us. That agreement is in the appendix. It was submitted to the Court because there was a jurisdictional question about that. But to answer your question, I think the other apparatus claims would need to be addressed as well. Although there are both apparatus and method claims that are at issue both for the written description and there are method claims that are at issue for the 101 question as well. Well, Apparatus Claim 29, which was part of the 305 patent, expressly required a blue noise mask. Yes, it did, Your Honor. And I take it it's your argument that the 228 patent, anyway, the written description of the 228 patent supports that claim. That's exactly right. And if it does, then the Court was wrong in its last minute blowing that one away. Is that right? Yes. And we could either reverse or we could vacate depending upon how we felt about that. That's right. But that doesn't answer the question, for example, of the status of Claims 4 and 63 of the 772 patent, does it? It does not because those don't recite a blue noise mask expressly. Now, if you look at the actual meaning of those claims, they do have aspects of a threshold mask, very specific characteristics that are claimed, and while they are not of identical scope, we'd say they are certainly supported by the original disclosure as well. Well, 4 and 63 are quite different, aren't they, in their terms? Well, they're not quite different. Some different. They are some different, yes. Now, there is one that seems to stand out, and that's the construction of the term blue noise mask included wraparound properties. And so, for example, you don't see that in Claims 4 and 63. But you also don't see anywhere in the specification that says the invention is a particular mask that has wraparound properties. That's not the invention. You want to read it very broadly to include any way of coming up with that mask effect. Is that right? Yes, subject to the limitations that are actually in the claims. We do want it to be read somewhat broadly, but there are specific limitations. For example, Claim 4 says that the mask produces substantially all dock profiles that are produced when the array is thresholded at each level have a power spectrum substantially characteristic of a blue noise power spectrum. The problem of written description, as this Court has recently stated, is that you've claimed more than you've described,  Now, where in the record, however, is there any proof that a person of skill in the art would perceive these claims to cover a non-blue noise mask method of getting a visually pleasing presentation? That's really the issue, isn't it? It is. I think if... Is there any... I see a hole in the record. I don't see a person of skill in the art testifying or any evidence saying, Oh, yes, that claim covers a lot more than blue noise masks, and we would read it as such. Well, there is Dr. Hunt's declaration and his expert report that were in the record. Then you have to respond to that. Well, that's from our side.  And the district court said that that didn't change the result. And certainly there have been written description cases that this Court has decided where there has been expert testimony and inventor testimony. So Mr. Hunt sees it as blue noise mask and nothing beyond, but is there anything that shows that the claims are broader than the description of a blue noise mask? I would actually say Dr. Hunt sees it as beyond a blue noise mask. He testifies. His testimony would be to the opposite of that. So that this description is broad enough to encompass what the claims are. That's right. It's broad enough. Now, we're not claiming any and all professional masks. I would hope you'd make that argument and your expert would support it. What's that? I would hope you'd make that argument and your expert would support it. But do we know what a person of skill in the art would perceive the claims to cover? Do we have any evidence of that? We do have the Court's claim construction as to what the claims cover, and I think that is the indication of what the scope of those claims are. And I assume that the judge did take into account what a person of ordinary skill in the art would consider. Claim construction is not an issue here. What we have in the specification is a description of a threshold mask, and there are various characteristics of it. The claims don't have to recite every characteristic. That would be—there would be no need for claims. We would just refer to the specification. And so it can be described in broader and more narrow terms, as long as those characteristics are supported and they're sufficient to distinguish the prior art. Now, what the Court also did, I think, in construing the blue noise mask, is essentially say it has to be a mask made according to Figure 2, and the only mask that satisfies that is one that's made according to that method. And certainly Microsoft makes that argument. Now, I think that is clearly wrong, that we would have to import those method steps into these apparatus claims. You can't claim a blue noise mask other than in the way it is made. There would be infringement problems. There are lots of issues that go along with that. So claiming it by its characteristics, which is how it's described— But the issue isn't whether the blue noise mask is limited. It's whether other than blue noise masks are covered. Well, that's right, Your Honor. And to understand, we have to look at what a blue noise mask is. The Court defined that it's a halftone mask that has wraparound properties that produces blue noise in a visually pleasing dot profile. Now, if you look at the other claims, like Claim 63, that also talks about a claim to a threshold mask that has a visually pleasing dot profile. And if you look at the Court's claim construction, that means it has the substantial characteristics of a blue noise power spectrum. It's not like these claims are completely divorced from the blue noise power spectrum, the blue noise mask. They are not defined in exactly the same terms, but they all have similar characteristics. But the question is not whether a claim that is written somewhat broadly is enforceable against a blue noise mask. The question is whether it's enforceable against other masks. Well, that's right. If it's a blue noise mask or, stated in other terms, a mask that has substantial characteristics of a blue noise power spectrum, that would be Claim 63, which also has to be locally aperiodic. It has to have low anisotropy. It has to have a lack of low-frequency graininess. Those are all characteristics of the threshold mask that's described. So by simply saying you need the words blue noise mask in the claim, which is what the District Court essentially did, it doesn't really answer the question. We can't just take everything in the specification and say that's what the claim has to cover. Otherwise, the claims would have no scope. I want to shift you to the Bilski issue. Sure. Let's go to that. One question for you. Yes. The Court excludes certain claims that it sees as too abstract, but within those same patents, in the 310 patent, for instance, Claim 12 recites a computer. Claim 14 recites a computer. In the 228, Claim 8 recites a memory. Claim 10 recites a computer. Since this is a question of subject matter in eligibility, how can we say that subject matter of this patent is not eligible when it recites a computer, it recites a printer? I'm kind of saying, doesn't this doctrine go up by the patent subject matter, not claim by claim? I definitely think you need to look at the specification and what is intended to be covered here, and not strictly as Claim 1 of the 310 patent. But it's the whole subject matter, right? That's right. And if the subject matter at some point recites a computer and a printer, the game's over, right? I would say yes. It isn't a question of seeing if they forgot to put the word computer in a claim, and so we get rid of that claim.  And that's essentially what we've argued with respect to those claims, that whether or not the word computer appears in these three claims that are issued, that's what the subject matter is about. It's about grayscale images. It's about pixel-by-pixel comparisons. These claims were written in a time where the person drafting it probably had no idea that putting the word computer in the claim would make a difference, but certainly they are directed to that. So almost irregardless of what the Supreme Court does, this is a computer invention and an eligible. I would agree, yes. That assumes that reciting a computer is all that's needed to meet the machine test. Is that right? Well, that would be true, at least based on what I just said. Even if the computer is not necessary to the invention, but just the recitation of a computer makes it a 101 eligible? Is that your understanding of our law? Yes, but I would also say that this invention requires a computer. It has no practical application without it. We're talking about grayscale images. We're talking about pixel-by-pixel comparisons. We're not talking about something computer. But the Court said you could do it with a pen and paper. What's it mean? I don't think that's realistic, and that's certainly not consistent with anything in the specification. That goes back to reading the claim was overly broad. What the Court is saying is that you could look at the mask and the numerical grayscale representation and see if it's higher or lower and color it in, right? I suppose so. And that's not exactly what happens in a computer, right? No, it's not. Or what's described is the preferred embodiment with a comparator and a computer. It's got to happen in milliseconds, or you're not getting an image. Whether it's a printer or a display, that's exactly what's going on. And so the practical application, as I think the specification makes clear, is tied to a machine. So based on your probably deepest understanding of Bill's scheme, of most of us, is your general sense that however the Supreme Court decides these claims and this invention would meet the statutory requirements as to however 101 may be ultimately interpreted? With some trepidation, I would say that's my general understanding. I have no idea what the Supreme Court will say. They could say something. We are all trepidating with you. You prefer the machine analysis to the transformation analysis. I don't prefer it. I think they are both equally viable. The transformation here is a transformation of electronic data, and I think it's very comparable to some of this Court's other cases, such as the arrhythmia case, which involved a transformation of electronic data. This is a particular type of data. It's image data. The Court got off on the wrong track saying there had to be a visual depiction, no need for a display. That's not a requirement of Bill's scheme. And so I think the transformation problem is equally viable. Okay. Thank you, Mr. Jakes. Would you give Mr. Vandenberg an additional three minutes if he needs to use it, and we'll restore your full rebuttal time, Mr. Jakes. And that keeps the time even. Wait one second, Mr. Vandenberg. Get the clock correct. Now you may proceed. May it please the Court. I'd also like to begin with the priority date or effective filing date issue, and note when counsel read the claim construction for blue noise masks, there was a key portion that counsel inadvertently left off at the end. The definition of blue noise mask is a half-ton mask with wraparound properties that produces blue noise and visually pleasing dot profiles at any level of gray. And that's the key point. At any level of gray was construed as means the same as at every level of gray. And therefore, in this litigation, when RCT went to prove Are there masks other than blue noise masks that produce dot profiles with substantial characteristics of a blue noise power spectrum? Yes, and they would do so. Where does the record contain any evidence of these additional masks that produce substantial characteristics of a blue noise power spectrum? And what are they called? Probably not in the appendix, but in the record, when RCT went to prove infringement by our software, they had different analyses for different claims. For the claims that required a blue noise mask, they attempted to prove that each and every level met these mathematical qualities. For these claims, 772, it was more lax. They didn't need to prove every level. I'm listening still to hear if there's something other than a blue noise mask that has the substantial characteristics of a blue noise power spectrum. Yes, any technique that is avoidant cluster technique, which was defined by Dr. Ulichny, and that was the technique we used, there was evidence in the record that our masks Now, we're looking for a mask. I want a technique. I want a mask. So what's this mask called? Well, one of ours was called a supercell mask, and when you used our supercell mask, Where's that in the record? It's not in the appendix because there is no dispute on it. Isn't that necessary for you to make your case? Well, Your Honor, that would go to infringement or claim construction. But you've got to show us that somehow they've claimed more than they've described. Don't you have to show us what more they have claimed and how it would cover more than what they've described? Well, RCT admitted, Your Honor, that the claims of the 772 patent did not require a blue noise mask. They admitted that a blue noise mask was narrower, and they admitted that you could infringe the 772 claims without infringing the other claims. And all that's undisputed, and that's why neither party spoke to claim construction in the appeal briefs there. I think one of the key issues here on the priority date, in fact, the filing date, is that RCT did not argue that there was a genuine issue of material fact prohibiting summary judgment in our favor and therefore waived any such argument. Mr. Vandenberg, just let me interrupt you for a moment. You and Mr. Jase keep talking about the effective date issue, the priority issue. That's a little puzzling to me because there's no prior art issue involved in this case, at least not that I can identify. And is that prior art, effective date, is that a surrogate for really asking the question, does the written description support claims? Your Honor, it certainly is parallel with the written description issue, but it's not identical. Because the prior art is the first patent, right? The prior art included, yes, the first patent with a different disclosure, an earlier disclosure. The second application in 1991 was a CIP. And the party stipulated, RCT stipulated, that if these 772 claims were not entitled to a 1991 date, then they were invalid over the prior art. So the first key point is that there's no argument that there's a genuine dispute of material fact barring Judge Jones. The second key point is even if this Court were to disagree with Judge Jones and not want to affirm Judge Jones an effective filing date, that does not mean that any claim is valid or not invalid because we were ready to go to trial and prove that these claims were invalid no matter what priority date they got. We had prior art. We were ready to go the very next day to trial and prove to the jury that these claims were invalid with or without a 1994 date. We were also ready to prove to the jury that these claims were not entitled to a 1991 date on alternative grounds, namely non-enablement. So again, we submit for the reasons briefed that the Court should affirm Judge Jones' ruling on the 772 patent. But when you say these claims, you mean the claims interpreted, construed, as more broadly than limited to the blue noise. Specifically, now, yes, I'm speaking to the 772 claims. And if I could speak a moment longer on the merits of those, those claims are much like the claims that this Court addressed in its Aniscape v. Nintendo decision in April of this year. In Aniscape, the parent application's invention is limited to a hand controller that is movable in six degrees of freedom relative to the base, but the claims were broader. The claims covered controllers that did not require six degrees of freedom. That's exactly our case here. Here, the 1991 application was limited, the parent 1991 application was limited to construction or calculation of a blue noise mask. And yet these claims, as RCT admitted and relied on at trial, were broader. They were seeking to prove infringement without proving the existence of a blue noise mask for these claims. And that's the same problem in Aniscape. And just as in Aniscape, every part of the parent application was clear that the application was limited to a blue noise mask. The title... So are you telling us that for the other patents it's irrelevant what happens to Claim 29? No, Claim 29 certainly is not irrelevant. I'll just finish the thought on the 772. The 1991 application required a blue noise mask in the title, the abstract, the summary of the objects, and all the claims as filed. And RCT filed a series of patent applications, and from 1990 all the way up to January 1995, they always required a blue noise mask, which was a very narrow term because it required all 256 levels had to have these very specific requirements that the claim construction required. So in January 1995, they decided to broaden out the claims. And we see some of those in the 772. Now on Claim 29, as the Court has recognized, that is a very different issue. Claim 29 requires... Claim 29, 305 patent, requires a blue noise mask, so it is narrower than 305 and therefore a better argument for RCT. We certainly concede that. But we submit, as the judge found, that those claims also were too broad because they cover every conceivable type of blue noise mask, every conceivable example. A key point about the 91 application is it does not have a mask in it. It does not have a single example or embodiment or species of a mask, not even part of a mask. If one looks at these patents, one will not see a single grid of numbers. There's no appendix with a mask. There's not a single embodiment. What they do have is an indirect disclosure of masks through a technique for calculating masks, again, giving no example of the use of that technique. And in that example, it's limited to figure 2 of the particular figure 2 algorithm. And we, in our partial summary judgment motion, submitted that the invention was limited to figure 2. And as we've cited in the brief, RCT, in effect, admitted that when they disputed only the results of figure 2, not the fact that the invention was limited to using the figure 2 algorithm. So what we have here is a 91 application whose only disclosure of masks was any mask that would result from using figure 2. And we submit that claim 29 was broader than that. And Judge Jones spent a lot of time in 2 hearings drilling RCT about, are these claims... He was focused on 7, 10, and 2, but do they require anything about how you create the mask? And RCT said no. Could be the roll of the dice. So what we have is a claim, claim 29... This spec tells you how to make a mask, doesn't it? I'm sorry, Your Honor. This spec tells you how to make a mask. Yes. Well, it tells you how to make a... Figure 2 tells you how to do it. How to make a subset of masks is our position. Claim 29 covers any mask that anyone could ever come up with. Could be much better and improved and more efficient, better mathematical properties... Now, is there anything in the record that would lead us to believe that one of skill and the art couldn't, with the methods given in the patent, find all of the blue noise masks that are necessary to operate the invention? Well, RCT admitted that one could not create a so-called ideal blue noise mask having the characteristics of Figure 1 of the patent. Could not achieve that using Figure 2. And yet if someone else came along later, some scientist came along and figured out a way of calculating an ideal blue noise mask with the properties of Figure 1, they would infringe this claim, even though RCT admitted in response to our subject... And they would indeed have an improvement patent, so they would... we'd have cross-licensing, right? Right. But the question again is, were they entitled to this genius of having a claim with a set of numbers having certain mathematical properties when they only had one narrow... The point is they'd be building on this invention. They would be working on the backs of those who'd come before. Why wouldn't we see that? Well, the question is, of course, whether or not... You're not suggesting written description writes out any chance of improvement patents and blocking patents, are you? No, certainly not, Your Honor. Certainly not. Good. Turning, if I may, to... If there are no more questions on effective filing, I'll turn to the 101 issue. If the patents universally talk about pixels a term unique to the computer-printer interface, and it talks about grayscale images, again, a computer-type term. Figure 4 shows a machine, a computer, a comparator, a binary display. Where is there an issue here? Well, we submit, Your Honor, that it has to be a claim-by-claim analysis, and Your Honor raised that question... It's a subject matter question, not a question of whether a claim is drafted. I mean, if you're going to say that, then in the future all I do is go back and put in every preamble in a computer, blah. And that would narrow the scope of one... And we'll never have another instance of Bilski problems again, will we? This can't be that. This is a question of subject matter ineligibility, something that is so abstract that we don't want anyone to even consider receiving the reward for innovating in this area. And there's nothing abstract here, is there? Well, there isn't, certainly. The claims that we're addressing simply require two sets of numbers to output a 0 or a 1. And RCT's applicants told us that... In a pixel grayscale image blue noise mass computer. That's not correct, Your Honor. In these claims, these three claims at issue... I'm not talking about the claims. I'm talking about the subject matter of the claims. Well, it certainly... It's different than whether or not they've recited it. It's the subject matter. Where is the subject matter lacking? Well, I admit that RCT has 218 claims in this family of patents, and a large number of those recite a printer or a display or a computer. And what's the image? What's the issue? Those claims we did not challenge under Section 101. It's not a problem. But just as in Ray Abele, where the broad claim was invalid under 101, but the narrow claim was allowed under 101. And just like in Bilski, where they spoke with approval of the Abele decision... It might be a bell. I apologize if I'm misstating it. But in any event, Bilski adopted that analysis and said that the broad claim was too broad and was not restricted to a particular transformation, and therefore it was invalid. So Abele certainly had patentable subject matter in its specification, and it had some claims that complied, but not others. We submit that the claims here are like the claims in Fluke and not the claims in DA. If they mention PIXL, are you out of the game? No. A PIXL is simply the same idea as a coordinate. It is clear that these claims have an intended use. They're not just comparing two sets of numbers to come up with 0 and 1 to play tic-tac-toe. Clearly, there's an intended use. Yeah, look at Figure 4. It shows the computer. Well, actually, the technique of the claims here, the comparison technique, does not occur in the computer. Figure 4 simply has a computer to store some of the numbers, the masked numbers. How could you do this fast enough to project an image on a screen if you were doing it by hand on a paper with a pencil? You couldn't, certainly. So this whole invention only has meaning in a computer. Well, my point was that the Preferton-Bond method did not use a computer. It used this logic chip, a comparator, which was outside the computer, to perform the mathematical calculation. In Fluke, the court said, citing the CCPA, said, if a claim is directed essentially to a method of calculating using a mathematical formula, even if the solution is for a specific purpose, the claimed method is non-statutory. And that's 437 U.S. at 595. That's our case. There's clearly an intended purpose here. The intended purpose is you use these 0s and 1s later to print or to display an image. No doubt about that. But these claims are broader and don't require that. We can infringe these claims. Unplug the monitor. Unplug the printer. And you can infringe these claims because these claims do not require any visual display of anything. And RCT told the Patent Office that, time and again, to be more precise, they told the Patent Office that in connection with other patents in the family. Even playing your game, which I'm not comfortable doing, it does recite a mathematical formula. It doesn't preempt that formula. It uses it, just as the Arrhenius equation was very well known in the Deere case. It was merely used. It was not preempted. This doesn't preempt all uses of the mathematical formula. Well, if one removes the mathematical algorithm from these claims, there is nothing left. The entire claim is... That would be the same of Deere. If you take the Arrhenius equation out, you cannot compute rubber production. But in Deere, if you remove the algorithm from that claim, you still had a physical process of putting rubber into a mold. Which couldn't possibly work because you have to have the Arrhenius equation to calculate rubber curing. It certainly wouldn't work as well. Same here. Our position is, if there was a claim here that said, take an image, scan it, compare it to a blue noise mask, and then print the result, that's not this case. We would not have challenged that under Section 101. These are not computer claims. These particular claims are not computer claims. They're not software claims. We like computer claims and software claims. This is a math claim. This is a purely mathematical claim. Again, they have hundreds of claims that are fine under 101. But as you go broader, you take risks. There's advantages of going broader. They don't have to prove that someone actually used it. Maybe someone came up with an image, compared it, got 0s and 1s, and transmitted it. You could prove infringement without actually showing the infringement. Showing the printing or display. Again, in summary, our position is, given the peculiar procedural posture we have here, there's no final judgment of the trial court. What we have are some preliminary rulings from Judge Jones, who stayed those rulings until post-verdict, because he wanted there to be a trial. Based on that posture, and based on RCT waiving any argument that there was a genuine issue of material fact, we submit the court should affirm the pretrial rulings that had been stayed. But at most, to the extent it does not affirm, it would vacate and not declare any claim not invalid, because we were ready to prove these claims invalid no matter what date they got. Thank you, Mr. Vandenberg. Mr. Jakes, you have 3 minutes remaining. Thank you. I'd just like to comment on the last point that Mr. Vandenberg made. This is a final judgment. The party stipulated and the court entered a judgment that is final and appealable. And the question of whether the claims are valid or invalid on other grounds is not before this court. As the court knows from the party's agreement, there are no more issues to be decided. The case will not be remanded. So whatever defenses Microsoft may have reserved or saved are not left. What we have here are two rulings by the district court that I believe this court can reverse as a matter of law. And once the court does that, the claims are presumed valid. There are no more grounds challenging it. They should be declared to be not invalid on the grounds that were addressed by the district court. If I could briefly address the Anescape case. I think that's very different than our case on the written description. In that case, the specification originally said there was a single input member that was operable and six degrees of freedom. As I understand that case, it was changed from basically one to one or more, which essentially erased the essential limitation of the application. We don't have that situation here. I think everyone would agree that claims are not limited strictly to what is in the specification. For example, if the preferred embodiment shows three, that can be claimed as a plurality, even though it might cover four or five. That's more analogous to what we have here. We have a description of a threshold mask that has various characteristics. And in the claims, that threshold mask is described in different ways, but they are all supported by the characteristics. What I heard Mr. Vandenberg say, I was listening to see what he was saying was covered by these broader claims that was not a blue noise mask. The only thing I heard was that a blue noise mask requires all 256 levels to have these characteristics. Well, if you look at the claims, they say substantially all. So I guess the problem that he has is the word substantial. And that is certainly a very small amount of broadening over what is in the specification and should be permissible in what is claimed. We're also not restricted to the ideal blue noise mask. That doesn't exist in nature, or even in the mathematics. It's an ideal construct, and the method that is disclosed, it won't achieve that ideal. I'm not sure that anybody has or anybody could. But it is certainly the metric that was used to describe what would be a preferable mask in this situation. I see my time is done, so I thank the court for attention. Thank you, Mr. Jenks. That concludes our morning.